**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| CMC Interconnect Technologies, Inc.; Third Dimension Semiconductor, Inc.; Great Wall Semiconductor Corp.; Icemos Technology Corp.; and Samuel Anderson, an individual,<br><br>Movants,<br><br>vs.<br><br>Fairchild Semiconductor Corp.,<br><br>Respondent. | No. MC-09-0003-PHX-DGC<br><br>**ORDER** |

Movants seek to quash a subpoena that Fairchild Semiconductor Corp. ("Fairchild") served on CMC Interconnect Technologies, Inc. ("CMC"). Dkt #1. A response, a reply, and a motion for leave to file a sur-reply have been filed. Dkt. ##7, 10, 24. For the following reasons, the Court will transfer this issue to the United States District Court for the District of Maine.

**I.     Background.**

Fairchild and Third Dimension Semiconductor, Inc. ("3D") are litigating a dispute over their patent licensing agreement before the United States District Court for the District of Maine. *See Fairchild Semiconductor Corp. v. Third Dimension (3D) Semiconductor Corp.*, Civ. No. 08-158-DBH (D. Me., filed May 15, 2008). Fairchild seeks a declaratory

judgment that it is complying with the agreement and an injunction against 3D's cancellation of the agreement in response to an alleged breach by Fairchild. Dkt. ##1 at 2; 7 at 1-2. 3D argues that Fairchild has breached the agreement by failing to pay royalties for the sale of several products incorporating 3D's patented designs. *Id.*

Prior to the litigation, the CEO and President of 3D, Samuel Anderson, contracted with CMC, an engineering laboratory located in Tempe, Arizona, to analyze Fairchild product FCP11N60 to determine if it incorporated 3D's patented semiconductor designs. Dkt. ##1 at 8; 1-2 at 2; 11 at ¶ 3; 12 at 2. Mr. Anderson submitted approximately five samples of that product to CMC on behalf of 3D in January, 2008, and CMC sent him a Secondary Ion Mass Spectrometry ("SIMS") report by the end of the month. Dkt. ##1-2 at 10; 7 at 2; 11 at ¶ 3-5; 12 at 2; 25 at 2. 3D continued to receive CMC's analytical services as Fairchild and 3D moved toward litigating their dispute over the licensing agreement. Dkt. ##11,12 at ¶¶ 8-9.

3D showed the one-page CMC SIMS report to Fairchild during pre-suit negotiations. As a result, a Maine federal magistrate judge ordered that 3D produce that page during discovery. Dkt. ##1 at 3; 7 at 3. As discovery continued, 3D produced several other SIMS reports from laboratories other than CMC. Dkt. #13 at ¶¶ 4-5.

At a November 5, 2008 evidentiary hearing on Fairchild's motion for a preliminary injunction, Mr. Anderson testified to the similarities between Fairchild's products and 3D's patents in technical detail, relying in part on CMC's SIMS report. Dkt. ##7 at 2; 13-4 at 4. Counsel for Fairchild directed Mr. Anderson's attention to that report on cross examination. Dkt. #13-4 at 6. Mr. Anderson stated that he had sent several samples of Fairchild's product to CMC for analysis. *Id.* at 7. Counsel for Fairchild asked Mr. Anderson if CMC had prepared separate SIMS reports for each sample. *Id.* at 9-10. Mr. Anderson explained that the single SIMS report covered all of the Fairchild product samples – he had sent CMC multiple samples in case "they broke" one. *See id.* at 9-10. But in an attempt to clarify the precise number of SIMS reports and Fairchild products associated with CMC's analysis, Mr. Anderson (as well as counsel for both Fairchild and 3D) appears to have confused CMC's

SIMS report with SIMS reports from different laboratories. *See* Dkt. ##8-2 at 3-5; 10 at 3; 13-4 at 9-13. Accordingly, Fairchild resolved to discover the character and extent of CMC's analysis for 3D. *See, e.g.*, Dkt. #8-2 at 3-5.

On December 30, 2008, Fairchild served CMC with a Rule 45 subpoena demanding production of (1) all documents concerning CMC's SIMS report, (2) all documents concerning any testing or analysis of Fairchild products for Movants, and (3) all communications between CMC and Movants, or their respective attorneys, regarding Fairchild products. *See* Dkt. #1-2 at 6-7. Movants ask the Court to quash the subpoena because it seeks information protected both by the work product doctrine and Rule 26(b)(4) of the Federal Rules of Civil Procedure. Dkt. #1 at 3-5. Fairchild contends that the work product doctrine does not shield CMC's information from discovery, and that 3D voluntarily waived any applicable Rule 26(b)(4) protection by disclosing CMC's SIMS report in pre-trial negotiations and by using it in Anderson's testimony at the preliminary injunction hearing. Dkt. #7 at 5, 7. Fairchild contends that the scope of 3D's waiver embraces all subject matter relating to CMC's analysis of any Fairchild products. *Id.* at 7-10.

## II.  Discussion.

This dispute clearly should be resolved by the court presiding over the Maine litigation. The dispute concerns the discoverability of information relevant to that lawsuit. It concerns a waiver alleged to have occurred during the preliminary injunction hearing in that lawsuit. Indeed, the parties' briefs quote excerpts from the hearing transcript and cite frequently to the docket in the Maine lawsuit. *See*, *e.g.*, Dkt. #7 at 2-4. What is more, a federal magistrate judge in Maine has issued at least one discovery ruling on the SIMS report. *Id*.

Rule 45 normally calls for the court that issued a subpoena to resolve disputes arising from the subpoena. *See* Fed. R. Civ. P. 45(c)(1), (c)(3)(A), (c)(3)(B). This presumably is because the recipient of the subpoena often will not be a party to the underlying litigation and often will not be subject to the jurisdiction of the court presiding over that litigation. In this case, however, the motion to quash concerns a dispute between Fairchild and 3D, parties to

the Maine lawsuit. CMC may be the recipient of the subpoena and one of the Movants in this Court, but the work product, privilege, and waiver issues raised in the motion all belong to 3D and Fairchild. The Maine court has jurisdiction over Fairchild and 3D, and 3D ultimately controls all of the documents Fairchild seeks to obtain through the subpoena.[1]

Federal courts have held that a court issuing a subpoena may transfer a dispute concerning that subpoena to the court presiding over the litigation, if circumstances warrant. *See Melder v. State Farm Mutual Auto Ins. Co.*, No. 1:08-CV-1274-RWS-JFK, 2008 WL 1899569 (N.D. Ga., April 25, 2008) (discussing cases). The Court concludes that transfer of this motion is warranted because of (1) the Maine court's familiarity with the complex underlying patent litigation; (2) the potential impact of this discovery dispute on that litigation; (3) the Maine court's familiarity with the specific events alleged to have produced a waiver, some of which occurred before the presiding district judge; (4) the Maine magistrate judge's prior ruling on a closely-related discovery issue; and (5) the fact that the Maine court has before it the key parties and lawyers involved in the dispute. The Court will therefore order that the motion to quash be transferred to the Maine court for decision.

**IT IS ORDERED:**

1. The motion to quash (Dkt. #1), including Respondent's motion for leave to file sur-reply (Dkt. #24), is transferred to the United States District Court for the District of Maine for resolution.

---

[1] The subpoena includes documents obtained from CMC by Samuel Anderson, the President of 3D, and Great Wall Semiconductor, allegedly an Anderson-related entity. Fairchild has made clear in its response, however, that it seeks these documents only to the extent that Anderson or Great Wall were acting on behalf of 3D. Dkt. #7 at 11 & n. 4. This portion of the subpoena, therefore, is also limited to the Fairchild-3D disagreement and is best addressed by the court presiding over the Fairchild-3D litigation.

2. The Clerk is directed to **terminate** this action.

DATED this 4th day of March, 2009.

David G. Campbell
United States District Judge

- 5 -